OPINION OF THE COURT
Meyer, J.
 The issues required to be resolved on this appeal are whether Harold Bernstein and other defendants (hereafter "Bernstein defendants”), in the second action referred to below, are "interested parties” within the meaning of CPLR 5015 (subd [a]) who may move to vacate the default judgment against Hancock Securities Corporation, obtained in the first action referred to below, and if so, whether the judgment should be vacated by reason of the fraud or misconduct of Norman Oppenheimer, plaintiff in both actions. We hold that the Bernstein defendants are interested parties and that their motion to vacate the judgment should have been granted. We, therefore, reverse so much of the order of the Appellate Division as affirmed denial of their CPLR 5015 motion, grant *600 the motion and remit the matter to Trial Term for a new inquest.
Plaintiff Oppenheimer was a principal in a company called Micronetic Corporation. He wished to sell 13,000 shares of its stock, which were unregistered and, therefore, could not be sold unless Oppenheimer qualified for exemption from Securities and Exchange Commission requirements. He obtained a legal opinion that he was exempt, based upon an affidavit submitted by him to his attorney, and then arranged, through his brokers, Vilas & Hickey, to sell 12,500 shares to Hancock and an additional 500 shares to another securities house. Hancock learned that Oppenheimer was the seller of the stock and, aware of his position as a principal of Micronetic, inquired of both Vilas & Hickey and Micronetic’s president, Jeffrey Westcott, about the matter. Westcott informed Hancock by letter that the affidavit on which Oppenheimer’s opinion letter was based "was not factual in a number of respects”, and, as a result, Hancock instructed Vilas & Hickey to cancel the sale.
Oppenheimer then began the first action, against Westcott, Hancock, Vilas & Hickey, and others, for breach of contract, libel and conspiracy. His complaint in that action was dismissed on motion of Vilas & Hickey at the end of plaintiff’s case, but the action was severed and continued as to Hancock, which had defaulted on the eve of trial, having become insolvent. On June 28, 1971, Oppenheimer obtained a default judgment in the amount of $267,473.71 against Hancock. When that judgment proved uncollectible from Hancock, Oppenheimer, in June, 1974, commenced a second action against Harold Bernstein and others claiming that since' they had looted Hancock and caused it to become insolvent he was entitled to recover from them the amount of the judgment as well as punitive damages.
In September, 1975, as the second "Bernstein” action was about to come to trial, evidence of Oppenheimer’s conduct in obtaining the default judgment having come to their attention, Hancock and the Bernstein defendants both moved in the first "Westcott” action under CPLR 5015 (subd [a], par 3) to set aside the judgment against Hancock. At the same time, the Bernstein defendants sought leave in the first action, pursuant to CPLR 1012, 1013 and 5015 to intervene in that action, and moved in the second action for summary judgment on the ground of fraud in procuring the Hancock judgments.
*601 Special Term considered all of these motions on a joint record. It granted Hancock’s motion on the ground that Oppenheimer had misrepresented the status of the first action by failing to advise the inquest Judge that the action against Vilas & Hickey had been dismissed, and set the first action down for a new inquest on all except the libel causes of action, as to which it held Oppenheimer collaterally estopped by the dismissal of substantially identical causes of action against Vilas & Hickey. The Bernstein defendants’ motions were, however, denied without prejudice to renewal upon completion of the inquest.
Oppenheimer appealed to the Appellate Division from the order setting the judgment aside and Hancock and the Bernstein defendants cross-appealed, Hancock on the ground that the damage inquest should have been further limited, and the Bernstein defendants on that ground and the further ground that their motions pursuant to CPLR 1012, 1013 and 5015 were improperly denied. The Appellate Division, by a divided court, modified on the facts and in the exercise of discretion to reverse so much of the Special Term order as vacated the judgment against Hancock and ordered a new inquest and otherwise affirmed, without prejudice to an application in the second, Bernstein, action to attack the judgment against Hancock on which it was based.
Hancock and the Bernstein defendants then appealed to this court as of right, but Hancock thereafter conceded, recognizing that the Appellate Division’s order as to it did not finally determine the merits of the action, that its appeal as of right did not lie. We therefore dismiss its appeal, leaving for our consideration only the Bernstein defendants’ appeal from the denial of its motions for leave to intervene and for an order pursuant to CPLR 5015 vacating the judgment. So much of the appeal as concerns the application to intervene is dismissed for nonfinality[1] (Cohen and Karger, Powers of the New York Court of Appeals, § 46, subd [b], pp 193-194). With respect to the denial of the CPLR 5015 applications, however, we conclude as to the Bernstein defendants who were strangers to the first action, that the order denying their motion is a final order (§ 45, subd [c], pp 188-189) and constituted an abuse of discretion as a matter of law. We now reverse as to that denial, and so that the Bernstein defendants may partici *602 pate in the inquest which we now order, join them as parties to the proceeding pursuant to CPLR 1003.
CPLR 5015 (subd [a]) provides that:
"The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of:
* * *
"3 fraud, misrepresentation, or other misconduct of an adverse party.”
Clear from its use of the words "any interested person ” within a dozen words of the phrase "relieve a party” is it that to avail himself of the remedy provided by that section one need not have been a party to the original action (see, e.g., Bardach v Mayfair-Flushing Corp., 49 Misc 2d 380, affd 26 AD2d 620). "To seek relief from a judgment or order, all that is necessary is that some legitimate interest of the moving party will be served and that judicial assistance will avoid injustice” (5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.15, p 50-252).
Without a valid judgment against Hancock, Oppenheimer has no claim against the Bernstein defendants. In light of that fact and of Hancock’s insolvency, it is manifest that no one has a greater or more legitimate interest in setting aside Oppenheimer’s judgment against Hancock than they do. Moreover, if in fact the default judgment was obtained by fraud or misconduct, judicial assistance will avoid the injustice that would be visited upon the Bernstein defendants were they required to undertake the costly defense of a baseless action.
Without passing on the status of the Bernstein defendants as interested persons, the Appellate Division majority affirmed Special Term’s denial without prejudice of their CPLR 5015 motion and added that its own determination was also without prejudice to an attack upon the Hancock judgment by the Bernstein defendants in the second action. In doing so, it relied upon Fuhrmann v Fanroth (254 NY 479), and Weinstein-Korn-Miller, New York Civil Practice (vol 5, par 5015.13), apparently with the thought that the fraud alleged was in the means by which the judgment was procured and, therefore, available as a basis for collateral attack in the second action. Accepting that premise, we nevertheless conclude that it was an abuse of discretion as a matter of law to require that a litigant seeking to attack a judgment directly, *603 proceed instead by the much more rigid and, therefore, more difficult and hazardous independent action route (cf. Fuhrmann v Fanroth, supra, pp 482-483; O’Neil v Meccia, 169 Misc 985, 988 [Bergan, J.]).
Weinstein-Korn-Miller (vol 5, p 50-246) characterizes the independent action as "obsolete in all but a few peculiar situations” because of the limited availability of such an action and CPLR 5015’s specific authorization to vacate judgments on the grounds of "fraud, misrepresentation, or other misconduct”. The inclusion in CPLR 5015 (subd [a], par 3) of "misrepresentation, or other misconduct” is based upon the parallel wording of rule 60 (subd [b], par [3]) of the Rules of Civil Procedure (US Code, tit 28, Appendix) and broadens the basis for relief by motion beyond that recognized in prior case law, which required the movant to establish the commission of a fraud (5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.08, p 50-234). Though the Advisory Committee notes make clear that the fraud forming the basis for a CPLR 5015 motion may be either extrinsic or intrinsic (Third Preliminary Report of Advisory Comm on Practice & Procedure, p 204 [1959]), and the removal of that troublesome distinction has been applied by analogy to an independent action to set aside a judgment (Levine v O’Malley, 33 AD2d 874), it is by no means clear that an independent action can be based upon misrepresentation or misconduct, as can a motion under CPLR 5015 (subd [a], par 3).
As we view CPLR 5015, it was intended to assure that a broad class of persons, not limited to parties in the formal sense, could move in the original action on grounds vastly broader than permitted at common law or under prior practice,[2] and thus to minimize the necessity for use of independent procedures of collateral attack upon a judgment. The Appellate Division, misconstruing that intent, erred in refusing to consider the merits of the Bernstein defendants’ motion simply because the avenue of collateral attack was open to them.
Turning, then, to a consideration of the merits, we hold that the default judgment against Hancock must be vacated, *604 for the record is clear that Oppenheimer was guilty of misconduct, if not fraud, in at least two ways.
At the inquest Oppenheimer claimed that Hancock’s refusal to pay for the Micronetic shares caused him to default in the payment of a promissory note, and thus to forfeit 70,000 shares of Micronetic stock pledged as security for the note. While his judgment against Hancock is predicated on the loss of the full 70,000 shares, what he failed to reveal to the inquest court was that he owned but 11,334 shares.
Moreover, Oppenheimer advised the Judge that his causes of action for breach of contract and for libel against Vilas & Hickey had been severed from his similar causes of action against Hancock, but failed to inform the Judge that the causes of action against Vilas & Hickey had been dismissed at the end of plaintiff’s case. Their codefendants’ success in defeating these causes of action, as to which the liability of Vilas & Hickey and of Hancock was, in substantial part, if not entirely, joint would inure to Hancock’s benefit (see Nathan v Zierler, 223 App Div 355; Kellogg & Sons v Bush, 31 Misc 2d 70; 49 CJS, Judgments, § 191, subd b, par [4], p 330). The withholding of that information from the court was, therefore, clearly misconduct, if not fraud, warranting vacatur of the judgment.
Accordingly, so much of the order of the Appellate Division as denied the motion of the Bernstein defendants to vacate the judgment against Hancock should be reversed, with costs, the judgment should be vacated, and the matter should be remitted to Trial Term for further proceedings in accordance with this opinion.

. On this point, the writer of this opinion agrees with the dissenters.

. The Third Preliminary Report of the Advisory Committee on Practice and Procedure (1959) noted, at page 206, that: "Relief is seldom sought by means of an independent action since it may only be granted as to extrinsic fraud and not as to intrinsic fraud [citations omitted], while relief based upon either type of fraud may be obtained by means of a motion in the original action.”