■ GREENWICH SAVINGS BANK, Plaintiff, v JAJ CARPET MART, INC., et al., Defendants. SCRIBNER COMPANY, Respondent, v ESTATE OF JACOB A. FINE, Deceased, et al., Appellants. UNITED STATES OF AMERICA, Intervenor-Appellant.—Order, Supreme Court, New York County (Allen Murray Myers, J.), entered October 1, 1985, which, *inter alia,* consolidated a pending declaratory judgment action with a surplus money proceeding in a mortgage foreclosure action and vacated and reopened a prior order of the court, dated April 8, 1985, based upon a stipulation of the parties, insofar as it directed that a portion of the surplus money be paid to the estate of Jacob A. Fine, reversed, on the law and on the facts and in the exercise of discretion, and the motion denied in its entirety, with costs and disbursements.

The Greenwich Savings Bank commenced a mortgage foreclosure action in October 1977, with respect to property located at 311 West 43rd Street in New York City. At the time, the record titleholders were Jacob A. Fine, Mitchell Fein and Charles Maxwell, who each held a 30% interest in the premises, and Myrtle Lesser, who held a 10% interest. During the pendency of the proceeding the titleholders, with the exception of Fine, conveyed their interest to Bajart Equities Corporation, purportedly the nominee of Scribner Company, a partnership composed of Myrtle Lesser, Mitchell Fein and Charles Maxwell (the Scribner partners). It is now alleged that the transfer to Bajart was part of an agreement among the Scribner partners and Fine, entered into sometime in 1978, which, in part, would have provided for the consolidation of record of all but Fine's encumbered interest in the premises, thereby enabling Scribner "effectively [to] deal and contract with a third party investor in an effort to salvage the partnership's equity in the building." Allegedly, it was also "decided that the interest of record in Jacob Fine's name would remain so, with him continuing to act as the [Scribner] Partnership's Trustee with respect to that interest." In short, Scribner contends, it was, by virtue of this alleged agreement, the beneficial owner of all interests in the premises. Jacob Fine died on July 14, 1978 and his estate has consistently denied that any such agreement ever existed.

In any event, it is undisputed that Fine and Bajart each held partial record title to the premises during the pendency of the foreclosure proceedings, to which each of the purported Scribner partners were parties as were Bajart and Fine's estate. Scribner, despite the knowledge of its partners, never intervened in the surplus money proceedings nor did it make any claim to the surplus money. The surplus money proceeding was eventually settled pursuant to stipulation entered into by and between, among others, Bajart and the estate. The stipulation, which recited that the claimants listed therein constituted all the remaining claimants in the surplus money proceeding, specified that the estate held 30% of the equity of redemption in the premises and that Bajart held 70%. It further provided "None of the undersigned will assert any further claims against the surplus monies apart from those claims specifically referred to in this Stipulation and no claimant will assert any duplicate claim for any of the monies which such claimant may receive pursuant to this Stipulation." The stipulation, executed by both Bajart and the estate, was signed and approved on April 8, 1985 by the Supreme Court Justice before whom the surplus money proceeding was pending. Through their nominee, Bajart, the Scribner partners received a distribution of over $2,000,000. The estate, as Scribner acknowledges it was aware, is insolvent and the United States Government, an intervenor-defendant in these proceedings and a priority creditor (see, SCPA 1811; 31 USC § 3713), has a claim against it in excess of $7,000,000.

Just four days after execution of the stipulation Scribner commenced this proceeding seeking a declaration that the estate's share of the surplus moneys belonged to the partnership. Scribner's motion in the declaratory judgment action for a preliminary injunction restraining the estate from accepting its share of the surplus moneys or applying the proceeds "to or for the benefit of anyone other than the [partnership]" was denied and this court affirmed. Undaunted, Scribner moved in the foreclosure action for a stay of the distribution of the estate's share of the surplus money, a reopening of the surplus money proceeding and a consolidation of the surplus money proceeding and the declaratory judgment action. Special Term granted the motion in its entirety. We reverse.

While CPLR 5015 (a) vests a court with the discretionary power to relieve a party from its judgment or order, that discretion should not be exercised where, as here, the moving party has demonstrated a lack of good faith, or been dilatory in asserting its rights. (See, e.g., Whitaker v McGee, 95 AD2d

938.) Furthermore, where the moving party's claim is of dubious merit, as here, that discretionary power should be subordinated to the policy favoring the finality of judgments. *(see, Walston & Co. v Klein,* 44 Misc 2d 607, *affd* 24 AD2d 559.)* It should be noted that, except for its attorney's affidavit, Scribner has failed to produce any evidence of an agreement that the estate, as well as Bajart, was acting as its agent for the collection of surplus moneys.

Essentially, Scribner urges three arguments in support of its claim that the surplus money proceeding should be reopened: the discovery of new evidence (CPLR 5015 [a] [2]); the entry of the distribution order on the basis of the estate's misrepresentation (CPLR 5015 [a] [3]); and interest of justice considerations. To qualify as new evidence, the evidence must have been in existence but have been undiscoverable with due diligence at the time of the original order or judgment. *(Matter of Commercial Structures v City of Syracuse,* 97 AD2d 965, 966.)* The existence of Scribner's purported claim to the estate's share was not information previously unavailable to Scribner. Moreover, the estate's consistent rejection of the claim in other related proceedings over the preceding three years was hardly a new development. Nor has Scribner demonstrated any showing of fraud or misrepresentation. The Scribner partners were indisputably on notice as early as September 14, 1982, and certainly by the time the stipulation of settlement was signed, that the estate had denied that Scribner had any claim to its interest in the premises. Since all the purported Scribner partners were represented in the surplus money proceeding and were, or should have been, aware of the estate's refusal to recognize their claim that it was their agent for the collection of surplus moneys, they can hardly be the victims of fraud or misrepresentations as to the estate's position. In this regard, Scribner fails even to allege fraud or misrepresentation in its moving papers. Finally, the interests of justice do not compel the reopening of the distribution order since the Scribner partners, with notice of the estate's position, had an opportunity to prove their right to the estate's share of the surplus moneys but elected to forego that opportunity. Concur—Sandler, J. P., Sullivan, Carro, Rosenberger and Wallach, JJ.