10 N.Y.3d 827 (2008)
890 N.E.2d 179
860 N.Y.S.2d 417
LAMONT WILSON, Respondent, et al., Plaintiff,
v.
GALICIA CONTRACTING & RESTORATION CORP. et al., Defendants, and
SAFWAY STEEL PRODUCTS, INC., Appellant.
Court of Appeals of the State of New York.
Argued March 18, 2008.
Decided April 29, 2008.
*828 Mauro Goldberg & Lilling LLP, Great Neck (Kenneth Mauro and Anthony F. DeStefano of counsel), and Ahmuty, Demers & McManus for appellant.
Pollack, Pollack, Isaac & DeCicco, LLP, New York City (Brian J. Isaac and Michael H. Zhu of counsel), and Law Firm of Allen L. Rothenberg (Marc J. Rothenberg of counsel) for respondent.
Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ and JONES concur; Judge PIGOTT dissents and votes to reverse in an opinion in which Judge SMITH concurs.

OPINION OF THE COURT
MEMORANDUM.
The order of the Appellate Division should be affirmed, with costs.
On June 18, 1999, at about 7:30 P.M., 16-year-old plaintiff Lamont Wilson allegedly was walking under scaffolding assembled by defendant Safway Steel Products when he saw the scaffolding shake and looked up, and a piece of material fell into his left eye. Plaintiff told hospital personnel that he thought that he had been struck by broken glass. Doctors surgically removed a small piece of metal that had imbedded in his eye and permanently damaged his retina.
On April 6, 2000, plaintiff filed suit against Safway and six other defendants, asserting various theories of liability. Over the ensuing months, Safway and certain other defendants failed to comply with plaintiff's formal and informal discovery demands, and with the terms of a preliminary conference order dated June 25, 2001. Ultimately, on plaintiff's application, the court issued a self-executing conditional order directing *829 defendants to comply by July 1, 2002 or their answers would be stricken.
Having failed to comply, Safway's answer was stricken as of July 1, 2002. This left unrebutted plaintiff's assertion that the cause of plaintiff's injury was "a dangerous, defective and/or unsafe condition" existing on defendant's premises. In early August 2002, at the request of a codefendant, plaintiff produced the object that had been removed from his eye; that defendant's expert opined that the object appeared to be a lead air-gun pellet that was "fired into his eye by the power of an air gun." Plaintiff thereafter discontinued his claims against the other defendants with prejudice, and by order dated June 18, 2003, the court granted his motion for an inquest against Safway, denying Safway's motion to dismiss.
Over the next two years, Safway unsuccessfully moved three times to vacate the order striking its answer and the order granting the inquest. First, Safway attempted to show a "justifiable excuse" for its conduct. The Appellate Division affirmed denial of that motion, concluding that Safway failed to offer "any acceptable reason for its two-year long pattern of failure to respond to discovery demands, court orders, or the conditional order" (8 AD3d 560). Next, Safway alleged that the underlying claim was fraudulent. The trial court determined that its decision to strike Safway's answer and allow plaintiff to proceed to an inquest was "wholly unrelated and in no manner the result of" alleged fraud but resulted solely from Safway's "own actions or inactions." Third, Safway claimed that the self-executing order was void ab initio due to a stay in another matter; the court denied that motion as well, finding the stay inapplicable. After the inquest and entry of judgment, the Appellate Division reduced the award but otherwise affirmed. We now affirm.
In our Court, Safway contends that CPLR 3215 (f) renders the judgment a nullity. Safwaywho was represented throughout by counsel, and offered no valid reason for ignoring the discovery demands and court ordersfailed to raise this argument in its prior motions.[*] As we have previously made clear, the requirement of preservation is not simply a meaningless technical barrier to review (see Bingham v New York City Tr. Auth., 99 NY2d 355, 359 [2003]). Here, for example, had defendant earlier raised CPLR 3215 (f), plaintiff might well have filed *830 the documents referenced in that section; the affidavit or verified complaint specified in CPLR 3215 (f) "need only allege enough facts to enable a court to determine that a viable cause of action exists" (Woodson v Mendon Leasing Corp., 100 NY2d 62, 71 [2003]). Today, nearly a decade after the incident, and years after dismissal of all codefendants with prejudice, the potential harm to plaintiff from reversing the consequence of Safway's counseled course of action is manifest.
As the conditional order was self-executing and appellant's "failure to produce [requested] items on or before the date certain" rendered it "absolute" (see Zouev v City of New York, 32 AD3d 850, 850 [2d Dept 2006]; Lopez v City of New York, 2 AD3d 693, 693 [2d Dept 2003]), the courts below correctly held that defendant was precluded from introducing any evidence at the inquest "tending to defeat the plaintiff's cause of action" (Rokina Opt. Co. v Camera King, 63 NY2d 728, 730 [1984]; see Weinstein-Korn-Miller, NY Civ Prac ¶ 3126.03 [a conditional order "will preclude proof as to matters not furnished unless the delinquent party provides the particulars within the time frame specified in the order"]). As a result, Safway was deemed to admit "all traversable allegations in the complaint, including the basic allegation of liability" (Curiale v Ardra Ins. Co., 88 NY2d 268, 279 [1996]).
Addressing the dissent, we agree that courts must protect the integrity of the judicial process and ensure that plaintiffs do not secure money judgments based on fraudulent claims. We do, however, assure those objectives by insisting on the parties' compliance with statutes and orders throughout the litigation process, particularly when both sides are represented by counsel engaged to make, and respond to, arguments for their clients. The objectives of honesty and integrity are not furthered when the Court goes outside applicable law to itself raise arguments not preserved in the trial court. Indeed, the dissent's major pointnoncompliance with CPLR 5015 (a) (3)has not even been presented to us.
For this Court now to do the "lawyering" is problematic for additional reasons. Here, for example, there is nothing nefarious in the 16-year-old's statement to hospital personnel immediately after the incident that he thought a piece of broken glass had fallen into his eye when he looked up. He did not actually know what had fallen into his eye; there is no "new theory" (dissenting mem at 832). Nor does the opinion of another defendant's expert establish that a metal pellet was fired *831 from an air gun (dissenting mem at 831); plaintiff's treating physician at the inquest acknowledged that the injury also could have been caused by a small metal object dropping from above. Finally, the dissent's solutionagain not sought by Safway before usoverlooks the unfairness to plaintiff of remittal for a hearing at this point, long after the accident and dismissal of all other defendants.
PIGOTT, J. (dissenting).
I respectfully dissent. In my view, Supreme Court abused its discretion by failing to consider the compelling evidence that plaintiff's negligence cause of action against Safway was fraudulent. Although Safway's answer was properly stricken due to its failure to comply with discovery demands, shortly thereafter, it presented proof that plaintiff's eye injury was caused by an air gun pellet, and not from a falling object emanating from its scaffold, as was alleged in the complaint. Such evidence should have been considered because courts must protect the integrity of the judicial process and ensure that undeserving plaintiffs are not awarded monetary judgments predicated upon fraudulent claims.
According to plaintiff's attorney-verified complaint (i.e., not sworn to by plaintiff or his guardian), plaintiff was injured "as a result of a dangerous, defective and/or unsafe condition existing upon [the] ... construction site when a piece of material was caused to fall from a scaffold or an area above" striking him in the eye. Safway's answer was stricken after it failed to comply with plaintiff's discovery demands and a conditional preclusion order. A short time later, plaintiff produced the "object" that hit him in the eye. The object was examined by Joseph F. Dyro, a certified clinical engineer with a Ph.D. in biomedical electronics engineering from the University of Pennsylvania, who opined that it was "equivalent in appearance, weight and dimensions to a 0.177 caliber pointed lead airgun pellet." Based upon the nature of plaintiff's injury, the expert concluded that the object was fired directly into plaintiff's eye and did not fall from the scaffold.
In response to plaintiff's motion for an inquest on damages, Safway cross-moved to dismiss the complaint, arguing that the object that caused plaintiff's injury did not come from its scaffold. Notably, during the pendency of this motion, after the air gun pellet was produced and examined, plaintiff discontinued the action against all nondefaulting defendants. Supreme Court nevertheless granted plaintiff's motion for an inquest against Safway and denied Safway's cross motion to dismiss the *832 complaint. The court concluded that Safway, through its default in responding to plaintiff's discovery demands, admitted the traversable allegations in the complaint regarding liability and causation and the expert opinion had "no bearing on the issue of plaintiff's right to an immediate trial or inquest on damages."[*]
Safway subsequently moved pursuant to CPLR 5015 (a) (3) to vacate the order granting plaintiff's motion for an inquest on the ground of fraud. Again, Safway argued that the evidence revealed that an air gun pellet, not an object falling from Safway's scaffold, caused plaintiff's injuries. Supreme Court denied Safway's motion, concluding that its prior order setting the matter down for an inquest "was a proper exercise of the court's discretion, unaffected by, wholly unrelated to, and in no manner the result of the fraud alleged by Safway to have been perpetrated by [plaintiff] concerning the issue of the manner in which ... plaintiff was actually injured." Instead, the court noted that its order was premised on Safway's disclosure noncompliance. The court concluded that it lacked the authority to vacate the order pursuant to CPLR 5015 (a) (3).
At the inquest, plaintiff recounted that, while standing under the scaffold with two friends, he saw the scaffold shake, looked up and an object fell into his eye. On cross-examination, he denied being struck with an air gun pellet. However, according to the medical records admitted at the inquest, plaintiff initially told hospital personnel that a piece of a glass bottle ricocheted off a wall hitting him in the left eye. Nevertheless, plaintiff testified to his new theory that a piece of metal fell from the scaffold. The court awarded plaintiff judgment in excess of $1 million for past and future pain and suffering.
The Appellate Division modified the judgment but only by reducing the amount of the award to $700,000. As for Safway's fraud argument, the Court held that Supreme Court properly found that Safway failed to demonstrate that plaintiff fraudulently procured the order directing an inquest. Specifically, it noted that "Safway was attempting to present a defense where it otherwise would not be entitled to, as its answer was stricken. There was no evidence that the plaintiffs' complaint was fraudulent or that the plaintiffs attempted to mislead the court in an effort to procure the judgment" (36 AD3d 695, 697 [2007]).
*833 As the majority notes, Safway's principal argument to this Courtthat plaintiff's failure to comply with CPLR 3215 (f) renders the default judgment a nullityis unpreserved. Although not argued here, Safway asserted in the courts below that its default should have been vacated pursuant to CPLR 5015 (a) (3) on the ground of fraud. Regardless of whether the issue was argued here, this Court should reach the issue because courts have a fundamental duty to ensure that judgments are not procured by fraud.
It is well settled that courts possess the inherent authority to ensure the integrity of the judicial process and guard against the procurement of judgments based on fraud (see Matter of Lyons v Goldstein, 290 NY 19, 25 [1943]; Matter of Holden, 271 NY 212, 218 [1936]; Furman v Furman, 153 NY 309, 314 [1897]). Pursuant to CPLR 5015 (a) (3), "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just ... upon the ground of ... fraud, misrepresentation, or other misconduct of an adverse party."
Here, in my view, the evidence of fraud in this case is compelling and should not be ignored by our courts merely because Safway failed to respond to discovery requests. The majority correctly notes that one of the ways the objective of protecting against the procurement of judgments based on fraudulent claims is accomplished is by insisting on compliance with statutes and orders throughout the litigation process. However, the law also provides an additional safeguard against fraudulent judgments, i.e., a CPLR 5015 (a) (3) motion, even where an answer is stricken due to a defendant's failure to comply with a discovery order. Here, Safway made such a motion at Supreme Court before the inquest, and thus, the issue was properly preserved below.
First, Supreme Court erred in concluding that it lacked the authority to vacate its order directing an inquest under CPLR 5015 (a) (3). As we have previously recognized, "the fraud forming the basis for a CPLR 5015 motion may be either extrinsic or intrinsic" (Oppenheimer v Westcott, 47 NY2d 595, 603 [1979], citing Third Preliminary Report of Advisory Comm on Prac & Pro, at 204 [1959]; see Weinstein-Korn-Miller, NY Civ Prac ¶ 5015.09).
Next, in its CPLR 5015 (a) (3) motion, Safway presented expert evidence that clearly supports its claim that plaintiff's eye injury was caused by a lead air gun pellet and not by a glass bottle or an object falling from Safway's scaffold. However, Supreme Court, in deciding the motion, refused to consider the *834 strong evidence of fraud, concluding that its previous order directing an inquest against Safway stemmed from Safway's discovery noncompliance, and thus, that order itself was not procured by plaintiff's alleged fraud. But the claim is not that plaintiff committed fraud in obtaining the order directing an inquest, but rather that he procured a $700,000 judgment from the court based on the fraudulent claim set forth in his complaint that he was injured from a "piece of material" falling from Safway's scaffold. Based on this contrary evidence, to date unaddressed by plaintiff, a serious question has been raised that plaintiff has perpetrated a fraud on the court by procuring a judgment premised upon a fraudulent legal claim against Safway. Thus, in my view, Supreme Court erred in holding that it could not consider the evidence of fraud on Safway's CPLR 5015 (a) (3) motion. Accordingly, I would reverse the order of the Appellate Division and remit the matter to Supreme Court for reconsideration of Safway's CPLR 5015 (a) (3) motion, and if deemed necessary, conduct a hearing whereby Safway would be permitted to attempt to prove, by the clear and convincing evidence standard, that plaintiff procured the judgment by fraud.
Order affirmed, with costs, in a memorandum.
NOTES
[*] Defendant's alternative argument in our Courta purported violation of the Disciplinary Rules by plaintiff's counselis similarly unpreserved.
[*] Although Safway did not object, plaintiff never submitted a verified complaint or an affidavit of merit in his motion to proceed to a damages inquest or at the inquest itself, thus failing to offer "proof of the facts constituting the claim," as required by CPLR 3215 (f).