OPINION OF THE COURT
Thomas F. Whelan, J.
It is ordered that this motion (No. 003) by the plaintiff for an order vacating the judgment of foreclosure and sale dated December 14, 2009 is considered under CPLR 5015 and is denied.
This uncontested mortgage foreclosure action was commenced in December of 2007 and was concluded by the issuance and entry of a judgment in December of 2009. No answer was served by any of the named defendants and no non-answering appearances were interposed. The sale of the mortgaged property contemplated by the judgment was, however, not conducted.
By the instant motion (No. 003), the plaintiff seeks an order vacating the judgment it obtained by its successful prosecution of its claims for foreclosure and sale of the mortgaged premises. The motion is opposed by defendant, Joseph M. Guarino. However, the merits of the claims advanced in his opposing papers shall not be considered by the court since Mr. Guarino is a party in default in this action in which a judgment against him and his property has been entered and remains in full force and effect. Absent a vacatur of his default, which is not requested, Mr. Guarino is without authority to oppose or otherwise participate on this motion (see CPLR 3215 [f]; U.S. Bank N.A. v Gonzalez, 99 AD3d 694 [2d Dept 2012]; Deutsche Bank Trust Co., Ams. v Stathakis, 90 AD3d 983 [2d Dept 2011]; Holubar v Holubar, 89 AD3d 802 [2d Dept 2011]; McGee v Dunn, *964 75 AD3d 624, 624 [2d Dept 2010]; see also Mark C. Dillon, Unsettled Times Make Well-Settled Law: Recent Developments in New York State’s Residential Mortgage Foreclosure Statutes and Case Law, 76 Albany L Rev 1085, 1114 [2012-2013]).
The reason advanced by the plaintiff as the basis for the relief requested is its purported inability to comply with affirmation requirements imposed upon its counsel under the terms of Administrative Orders (of Chief Admin Judge of Cts) AO/548/10 and AO/431/11. These highly unusual administrative orders were adopted and implemented following the dissemination of widely publicized national media accounts of misdeeds in the preparation of foreclosure papers by mortgagees in states other than New York. Concern on the part of court administrators over the veracity of alleged facts and the propriety of the procedures employed in the preparation of affidavits of merit submitted in residential New York foreclosure actions was the apparent basis for the issuance of the administrative orders numbered 548/10 and 431/11. These orders or rules, as they are sometimes referred to, impose vouching requirements upon counsel for foreclosing plaintiffs in all foreclosure cases in which a sale has not yet occurred. The plaintiffs counsel must independently verify the accuracy of the notarizations contained in the supporting documents filed with the foreclosure action upon application for the final judgment or, if already issued, prior to the sale. While counsel’s compliance therewith has been held to be mandatory (see U.S. Bank N.A. v Faddy, 109 AD3d 908 [2d Dept 2013]), the affirmation itself has also been held to be non-substantive in nature (see LaSalle Bank, NA v Pace, 100 AD3d 970 [2d Dept 2012]).
In its moving papers, the plaintiff asserts that it is unable to satisfy the affirmation “vouching” requirements although all previously alleged facts regarding the obligor defendants’ payment defaults “are unchanged.” The plaintiff thus intends to have a new affidavit of merit executed by its agent to facilitate the preparation of the attorney’s affirmation. For reasons not apparent from the moving papers, the plaintiff believes that a vacatur of the judgment previously awarded to it some four years ago is necessary.
The court, however, finds this application to be in conflict with well established legal maxims of finality and with fundamental principles governing the independent adjudication of cases and wasteful of the extremely limited judicial resources available to state trial courts.
*965 “It is elementary that a final judgment or order represents a valid and conclusive adjudication of the parties’ substantive rights” (Da Silva v Musso, 76 NY2d 436, 440 [1990]; see Matter of Huie [Furman], 20 NY2d 568 [1967]). Legal maxims such as law of the case and collateral estoppel serve to protect the sanctity and finality of litigated judicial orders and judgments, while the doctrine of res judicata does the same for such orders and those issued upon default (see TD Bank, N.A. v Talia Props., Inc., 110 AD3d 1057 [2d Dept 2013]; Richter v Sportsmans Props., Inc., 82 AD3d 733 [2d Dept 2011]; 83-17 Broadway Corp. v Debcon Fin. Servs., Inc., 39 AD3d 583 [2d Dept 2007]; Rosendale v Citibank, 262 AD2d 628 [2d Dept 1999]). These maxims are the root of the finality doctrine which has been characterized as: “[a] policy against relitigation of adjudicated disputes [that] is strong enough generally to bar a second action even where further investigation of the law or facts indicates that the controversy has been erroneously decided, whether due to oversight by the parties or error by the courts ” (Matter of Reilly v Reid, 45 NY2d 24 [1978] [emphasis added], citing Deposit Bank v Frankfort, 191 US 499, 510-511 [1903]). “Considerations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation. Afterthoughts or after discoveries however understandable and morally forgivable are generally not enough to create a right to litigate anew” (Matter of Reilly v Reid, 45 NY2d 24, 28 [1978], supra). Vacatur of final adjudicatory documents, such as an order or judgment, and a relitigation of the causes determined therein, is generally precluded by the finality doctrine.
In addition to determinations affected by errors, adjudications influenced by instances of perjury do not warrant a re-adjudication of the case upon the invocation of the court’s inherent power to vacate a judgment on the grounds of fraud. In Jacobowitz v Herson (268 NY 130, 133-134 [1935]), the Court of Appeals described the nature of this rule and the reasons underlying as follows:
“The authorities are uniform in holding that an action in equity will not lie to set aside a judgment in an action for intrinsic fraud, that is, for perjury or false swearing on the trial. Pomeroy states in his Equity Jurisprudence (Vol. V, § 2077, p. 4683) the rule as follows: ‘The courts hold that perjury is intrinsic fraud and that therefore it is not ground for equitable relief against a judgment resulting *966 from it. We have seen that the fraud which warrants equity in interfering with such a solemn thing as a judgment must be fraud in obtaining the judgment, and must be such as prevents the losing party from having an adversary trial of the issue. Perjury is a fraud in obtaining the judgment, but it does not prevent an adversary trial. . . . However, public policy seems to demand that there be an end to litigation. If perjury were accepted as a ground for relief, litigation might be endless; the same issues would have to be tried repeatedly.’
“This State is committed to the rule that the perjured testimony of the successful party or his witnesses at the trial, even where the false testimony was procured by a conspiracy, is not sufficient ground for vacating a domestic judgment or enjoining its enforcement. (Ross v. Wood, 70 N. Y. 8; Gitler v. Russian Co., 124 App. Div. 273; Standard Fashion Co. v. Thompson, 137 App. Div. 588; Crouse v. McVickar, 207 N. Y. 213.) As before stated, the weight of authority in this country is to the same effect. (Freeman on the Law of Judgments [Vols. 1 and 3, 5th ed.], §§ 235, 1241, 1242.) (See, also, Metcalf v. Gilmore, 59 N. H. 417; Mahoney v. State Ins. Co., 133 Iowa, 570; Riley v. Murray, 8 Ind. 354; El Capitan Land & Cattle Co. v. Lees, 13 N. M. 407).”
Inherent powers of a court to vacate its own orders and judgments on grounds of fraud have thus been viewed as extending only to extrinsic fraud and not to intrinsic fraud, such as perjury at trial (see Matter of Lockett v Juviler, 65 NY2d 182 [1985]; Jacobowitz v Herson, 268 NY 130 [1935], supra; Matter of Holden, 271 NY 212, 218 [1936]). To justify a court in setting aside and vacating a judgment on the ground of fraud, the fraud complained of must have been “extrinsic,” that is, practiced in the very act of obtaining the judgment in such a way that a party was prevented from fully and fairly litigating the matter (see Matter of Holden, 271 NY 212 [1936], supra; Citimortgage, Inc. v Brown, 111 AD3d 593 [2d Dept 2013]; Augustin v Augustin, 79 AD3d 651 [1st Dept 2010]; Shaw v Shaw, 97 AD2d 403 [2d Dept 1983]).
The inherent power of the court to vacate its own judgments does, however, extend to cases in which the court finds that the interests of substantial justice so require (see Woodson v Mendon Leasing Corp., 100 NY2d 62, 68 [2003]; HSBC Mtge. Servs. *967 v Talip, 111 AD3d 889 [2d Dept 2013]; Mortgage Elec. Registration Sys., Inc. v Dort-Relus, 107 AD3d 861 [2d Dept 2013]; US Bank N.A. v Slavinski, 78 AD3d 1167 [2d Dept 2010]; Katz v Marra, 74 AD3d 888 [2d Dept 2010]). It is the movant’s burden “to show that the prior order[ ] should be set aside by submission of sufficient evidence supporting the grant of such relief’ (Mortgage Elec. Registration Sys., Inc. v Dort-Relus, 107 AD3d 861, 862 [2013], supra). Allegations of improper practices by a plaintiff or its agents in unrelated matters do not suffice (see Citimortgage, Inc. v Bustamante, 107 AD3d 752 [2d Dept 2013]; Wells Fargo, N.A. v Levin, 101 AD3d 1519 [3d Dept 2012]; cf. GMAC Mtge., LLC v Bisceglie, 109 AD3d 874 [2d Dept 2013]).
In contrast to its inherent powers, courts are statutorily authorized to vacate a judgment under CPLR 5015 (a) (3) for fraud, misrepresentation or misconduct of an adverse party (see Beltway Capital, LLC v Soleil, 104 AD3d 628 [2d Dept 2013]; Chase Home Fin., LLC v Quinn, 101 AD3d 793 [2d Dept 2012]; Katz v Marra, 74 AD3d 888 [2010], supra). The fraud contemplated by CPLR 5015 (a) (3) has been held to include intrinsic fraud, which rests upon false claims or perjury, as well as extrinsic fraud, which rests upon an impairment of a party’s right to litigate (see Wilson v Galicia Contr. & Restoration Corp., 10 NY3d 827, 830 [2008]; Oppenheimer v Westcott, 47 NY2d 595, 603 [1979]; Bank of N.Y. v Stradford, 55 AD3d 765 [2d Dept 2008]). Underlying this more modern view is the notion that the “courts must protect the integrity of the judicial process and ensure that plaintiffs do not secure money judgments based on fraudulent claims” (Wilson v Galicia Contr. & Restoration Corp., 10 NY3d 827, 830 [2008], supra; see also Nash v Port Auth. of N.Y. & N.J., 22 NY3d 220 [2013]). However, the objective of assuring the honesty and integrity of judicial processes has been held not to be “furthered when the Court goes outside applicable law to itself raise arguments” or does the “lawyering” for the parties to the action (Wilson v Galicia Contr. & Restoration Corp., 10 NY3d 827, 830 [2008], supra).
Here, the judgment of foreclosure and sale that was entered in this action some four years ago remains unchallenged by any party against whom it was rendered or by others with jural interests therein including the plaintiff. It thus constitutes a conclusive adjudication of all questions at issue between the parties and all matters of defense which were raised or could have been raised by any of the defendants (see Richter v Sportsmans Props., Inc., 82 AD3d 733 [2011], supra; 83-17 Broadway *968 Corp. v Debcon Fin. Servs., Inc., 39 AD3d 583 [2007], supra; Rosendale v Citibank, 262 AD2d 628 [1999], supra). The judgment is thus immune from attack except in the most limited circumstances, such as an appeal or upon a timely application for its vacatur by a party against whom it was rendered or other person interested (see CPLR 5015 [a] [1]; Oppenheimer v Westcott, 47 NY2d 595 [1979], supra; Matter of Huie [Furman], 20 NY2d 568 [1967]; Rizzo v Ippolito, 137 AD2d 511 [2d Dept 1988]; Greenwich Sav. Bank v JAJ Carpet Mart, 126 AD2d 451 [1st Dept 1987]). Since no facts constituting any one of the grounds necessary to support the vacatur of the judgment under the inherent or statutory powers of the court were advanced here, the vacatur of the judgment of foreclosure and sale requested is not available to the plaintiff.
Nor do the post-action commencement, administratively imposed affirmation requirements, with which the plaintiff cannot comply, constitute a valid basis on which the court may premise a vacatur of the previously issued judgment of foreclosure and sale (cf. CPLR 3012-b [eff Aug. 30, 2013]).
As indicated above, the affirmation itself has been held not to constitute “substantive evidence” nor a “new argument” or defense in favor of the defendant mortgagor (see LaSalle Bank, NA v Pace, 100 AD3d 970, 971 [2012], supra). The affirmation requirement was the product of Administrative Order 548/10, which issued in response to the dissemination of media accounts of misdeeds and misconduct in foreclosure cases elsewhere. Promulgation of such order and its amendment (Administrative Order 431/11) can be traced solely to the concerns of court administrators who apparently believed that the misconduct of foreclosing parties elsewhere had or was about to infiltrate foreclosure actions in this state (see affirmation form preamble attached to AO/548/10 and AO/431/11). However, neither the anecdotal reports of misdeeds of foreclosing parties elsewhere nor the categorical concerns of court administrators that similar misdeeds and misconduct might be present in foreclosure actions pending in this state are relevant to an adjudication of the issues before this court in such actions. The administrative orders and the affirmation requirements therein imposed thus appear to be a misguided attempt on the part of court administrators to go outside the law and to raise issues not raised by the parties under the guise of protecting “the [honesty and] integrity of the judicial process” (see Wilson v Galicia Contr. & Restoration Corp., 10 NY3d 827, 830 [2008], supra).
*969 In addition, it appears that the administratively imposed affirmation requirements are contrary to judicial conduct canons and several of the fundamental principles upon which the judiciary is premised. These canons and principles mandate a full, fair and independent judiciary by prohibiting the interjection of outside influences into adjudicatory processes thereby leaving the court with consideration of only the claims, pleadings and proofs put before it by the parties and the court’s judicious application of all relevant controlling principles of law thereto (see 22 NYCRR 100.2 [A], [B], [C]; 100.3 [B] [1], [2], [3], [4]). Although the affirmation requirements are aimed at precluding such outside events from permeating judicial foreclosure proceedings in this state, their effect is just the opposite, as the taint arising from the misdeeds and other nefarious acts engaged in elsewhere must be affirmatively disproved by submission of the mandated vouching affirmation of the plaintiff’s counsel. The affirmation requirements thus constitute a prohibited intrusion of outside factors into the independent adjudicatory processes this court is bound to observe.
It is the view of this court that the administrative orders and their affirmation requirements are not in keeping with the well established principles of finality and those governing adjudicatory processes, particularly, where as here, it is the successful plaintiff who seeks to tear down its own judgment rather than any party interested who is adversely affected thereby. The court thus finds that no judgment of foreclosure and sale nor any precursor order of reference that remains unchallenged under common-law and statutory provisions governing vacatur is subject to vacatur due to an inability to comply with administrative “orders” of a non-substantive nature.
These unfortunate circumstances do not, however, leave the plaintiff or its counsel without a remedy. In a recent case authority emanating from the Appellate Division, Second Department, the Court granted a foreclosing plaintiff who obtained a judgment of foreclosure and sale leave to file a new affidavit of merit, “nunc pro tunc” so as to facilitate the preparation of the attorney’s affirmation that is the subject of the above cited administrative orders (see U.S. Bank N.A. v Eaddy, 109 AD3d 908 [2d Dept 2013], supra). Similar applications may be employed in cases in which only an order of reference has issued. In such cases, the application should be made in conjunction with the motion for a judgment and include a proposed new affidavit of merit for which leave to file same is sought as *970 well as the attorney’s affirmation. Whenever made, these applications should not include demands for “vacaturs,” “ratifications” or “confirmations” of prior orders or judgments, as the aim thereof should be to move the action forward to its ultimate conclusion, i.e., a judgment of foreclosure and/or the sale of the mortgaged premises under an existing judgment by facilitating the filing of the attorney’s affirmation.
Here, no new affidavit of merit is attached to the moving papers and no attorney’s affirmation of the type contemplated by the above cited administrative orders was included as a submission. Instead, the plaintiff merely asks that the court vacate its unchallenged judgment of foreclosure and sale due to counsel’s inability to formulate the attorney’s affirmation. These omissions, coupled with the court’s finding that judgments of foreclosure and sale which remain unchallenged under common-law and statutory provisions should not be subject to vacatur due to an inability to comply with “orders” promulgated by court administrators, warrant a denial of this motion. The court thus denies this application without prejudice to a further application of the type contemplated by the appellate court in U.S. Bank N.A. v Eaddy.
Counsel are reminded that motions such as the instant one are extremely taxing upon the resources of the judiciary which has, for too long and unnecessarily so, been spread too thin insofar as the funding and staffing of judicial parts charged with the responsibility of adjudicating cases. This court and others are literally swamped with applications such as the instant one, which is, essentially, a “do-over” of a prior application that was duly considered and adjudicated by this court in a manner consistent with the canons of judicial ethics and the fundamental principles upon which the judiciary is premised. Colloquially known as “remediation” motions, no basis in law or fact has been presented nor found by the court to be supportive of demands for recall and/or vacatur of jurisdictionally valid orders and judgments that subsist without challenge for years in residential mortgage foreclosure actions. Counsel are thus urged to carefully tailor all future applications to the one granted in U.S. Bank N.A. v Eaddy, and to avoid the interposition of unnecessary and unduly burdensome applications like the one now before the court.