Highland Crusader Offshore Partners, L.P. v Celtic Pharma Phinco B.V. (2022 NY Slip Op 03211)

Highland Crusader Offshore Partners, L.P. v Celtic Pharma Phinco B.V.

2022 NY Slip Op 03211

Decided on May 17, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 17, 2022

Before: Mazzarelli, J.P., Oing, Moulton, González, Kennedy, JJ. 

Index No. 652056/13 Appeal No. 15950-15951-15951A Case No. 2021-02508, 2021-02509, 2021-02814 

[*1]Highland Crusader Offshore Partners, L.P., et al., Plaintiffs, NexPoint Credit Strategies Fund, Plaintiff-Appellant,
v
Celtic Pharma Phinco B.. et al., Defendants, Auven Therapeutics Management LLLP et al., Defendants-Respondents.

Reid Collins & Tsai LLP, New York (Yonah Jaffe of counsel), and Reid Collins & Tsai LLP, Austin, TX (Craig A. Boneau, of the bar of the State of Texas, admitted pro hac vice of counsel), for appellant.
Milbank LLP, New York (Scott A. Edelman of counsel), for respondents.

Judgment, Supreme Court, New York County (Joel M. Cohen, J.), entered July 13, 2021, dismissing the complaint upon a trial CPLR 4401 motion, unanimously affirmed, with costs. Appeals from orders, same court and Justice, entered on or about May 24, 2021, which denied plaintiffs' motion to vacate part of a September 22, 2020 amended order, and entered May 28, 2021, which, to the extent appealed, provided that the default judgment against defendant Celtic Pharma Development Services Bermuda, Ltd. (CPDSB) (s/h/a Celtic Pharma Services Bermuda Ltd.) would not have res judicata or collateral estoppel effect against the nondefaulting defendants or prejudice their ability to assert any defenses or make any arguments (the No Preclusion Provision), unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
The court properly granted the CPLR 4401 motion of defendants-respondents Stephen Evans-Freke and Auven Therapeutics Management, LLLP. Plaintiff-appellant NexPoint Credit Strategies Fund lacks standing to bring the second and third causes of action because they arise under the Transaction Documents (as defined in the indenture) but do not seek repayment of the notes. Hence, section 5.4 of the indenture (the no-action clause), rather than section 5.9 (the exception to the no-action clause) applies. Although the indenture trustee does not exist today, it existed at least through 2012, according to plaintiffs. Thus, they had more than six months after defendant Celtic Pharma Phinco B.V. (the Issuer) failed to pay to ask the trustee to sue.
Although NexPoint has standing to bring the first cause of action due to section 5.9, this claim was properly dismissed as against Evans-Freke and Auven. Plaintiffs alleged that Evans-Freke and defendant Celtic Pharma Management, L.P. (CPM) were the alter egos of the Issuer and guarantors and that Auven was CPM's successor in interest. Since the Issuer, guarantors, and CPM were all either (1) Bermuda entities or (2) subsidiaries of Bermuda entities, Bermuda law applies to alter ego liability (see Flame S.A. v Worldlink Intl. [Holding] Ltd., 107 AD3d 436, 438 [1st Dept 2013] [in general, "(t)he question of whether . . . corporate veils should be pierced will be determined by the laws of each (corporation)'s state of incorporation"], lv denied 22 NY3d 855 [2013]). Unlike Serio v Ardra Ins. Co. (304 AD2d 362 [1st Dept 2003], lv denied 100 NY2d 516 [2003]), this is not a case where the Bermuda entities' contacts with that jurisdiction "were minimal" (id.) or where the Bermuda entities were "controlled by [an individual] defendant . . . from New York and all the transactions complained of occurred in New York" (id.).
Under Bermuda law, veil piercing is not allowed where a counterparty knowingly contracted with a company rather than an individual or other entity affiliated with the company; it distinguishes between cases in which the corporate structure is used to evade existing legal obligations and [*2]those in which the corporate structure is used to provide insulation from future or contingent liabilities (the temporal requirement). It also requires the veil of each successive corporation in a chain to be pierced. As the trial court found, plaintiffs did not satisfy Bermuda law on veil-piercing. Defendants gave sufficient notice of Bermuda law (see Edwards v Erie Coach Lines Co., 17 NY3d 306, 328 [2011]). They also showed that Bermuda law and New York law on piercing the corporate veil conflicted because the former has an additional temporal requirement.
NexPoint has standing to bring the fourth cause of action because it is not a claim with respect to a Transaction Document; rather, it is a claim for violation of Debtor and Creditor Law former sections 273, 276, and 278. Since defendants failed to submit any evidence of foreign fraudulent conveyance law, the court should not have dismissed this claim on the ground that it was governed by foreign law (see Read v Lehigh Val. R.R. Co., 284 NY 435, 444 [1940] ["the question of what is the law of (a) foreign jurisdiction is one of fact. It must be proved as facts are proven" (emphasis, ellipsis, and internal quotation marks omitted)]; Gangel v DeGroot, 41 NY2d 840, 842 [1977] ["in the absence of proof of contrary applicable foreign law, the law of the forum should be applied"]). Unlike the plaintiffs in SFR Holdings Ltd. v Rice (132 AD3d 424 [1st Dept 2015], lv dismissed in part, denied in part 27 NY3d 977 [2016]), NexPoint did not concede that foreign law applies.
"It is the general rule that a corporation which acquires the assets of another is not liable for the torts of its predecessor" (Schumacher v Richards Shear Co., 59 NY2d 239, 244 [1983]). NexPoint relies on exceptions to this rule. However, since there was no evidence that Auven acquired CPM's assets (as opposed to some of CPDSB's assets), Schumacher and its exceptions are inapplicable.
Even if Schumacher applies to a corporation (Auven) that did not acquire another corporation (CPM)'s assets, the mere continuation exception does not apply. This "exception refers to corporate reorganizations . . . where only one corporation survives the transaction; the predecessor corporation must be extinguished" (Schumacher, 59 NY2d at 245). Auven was formed in 2007, but CPM was not dissolved until 2014. Thus, the mere continuation exception is inapplicable (see Ring v Elizabeth Found. for the Arts, 136 AD3d 525, 526 [1st Dept 2016]).
The de facto merger exception does not apply, either. As noted above, CPM was not dissolved until 2014; hence, it did not cease ordinary business operations and dissolve as soon as possible (see Matter of New York City Asbestos Litig., 15 AD3d 254, 256 [1st Dept 2005]). There was evidence that Auven did not assume any of CPM's liabilities. While there was evidence of overlapping (albeit not identical) management and personnel, this factor, by itself, does not suffice (see id. at 256, 259).
Because Auven is not CPM's [*3]successor, the fourth cause of action was properly dismissed. The same is true of the sixth cause of action, for money had and received.
As noted above, Evans-Freke is not CPM's alter ego. Thus, the sixth cause of action was also properly dismissed as against him.
The court did not improvidently exercise its discretion by denying plaintiffs' motion to vacate the No Preclusion Provision from the September 2020 order. Plaintiffs took Evans-Freke's deposition in November 2020 but did not move to vacate until May 24, 2021, after four days of trial (see generally Greenwich Sav. Bank v JAJ Carpet Mart, 126 AD2d 451, 452 [1st Dept 1987] ["While CPLR 5015(a) vests a court with the discretionary power to relieve a party from its . . . order, that discretion should not be exercised where . . . the moving party has . . . been dilatory in asserting its rights"]). In any event, Evans-Freke did not commit fraud, mispresentation or other misconduct (see CPLR 5015[a][3]) sufficient to warrant vacatur (see generally Greenwich, 126 AD2d at 453).
Since plaintiffs did not move for a default judgment against CPDSB until May 24, 2021, the timeliness concern that the court expressed about plaintiffs' motion to vacate part of the September 2020 order does not apply. However, defendants' and the court's concern about prejudice is still applicable. During the August 2020 oral argument on plaintiffs' motion for a default judgment against eight defaulting defendants (the motion that resulted in the September 2020 order), plaintiffs' counsel said that there was a ninth defaulting defendant (i.e., CPDSB) and that the No Preclusion Provision would also apply to it.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 17, 2022