Stein, J.
*1341 The O’Rourkes subsequently entered into an agreement with plaintiff (hereinafter the assignment agreement) pursuant to which they assigned to plaintiff their rights against Progressive and the O’Rourkes’ insurance broker, defendant HopmeierEvans-Gage Agency (hereinafter HEG).[2] In exchange for such assignment, plaintiff agreed to pay the O’Rourkes 40% of any recovery that he received from Progressive in excess of $300,000. Plaintiff then commenced an action (hereinafter action No. 2) in April 2009, as assignee of the O’Rourkes’ rights, asserting, as pertinent here, a claim against Progressive pursuant to Insurance Law § 3420 (a) (2) to recover part of the unsatisfied default judgment in action No. 1, as well as a bad faith claim based upon Progressive’s disclaimer of coverage. Both claims rely primarily upon plaintiffs allegations that the O’Rourkes provided timely notice to Progressive in 2002 and that Progressive failed to defend and/or indemnify them. Progressive moved for, among other things, an order vacating the default judgment against the O’Rourkes in action No. 1 pursuant to CPLR 5015 (a) (3) or in the interest of justice. Progressive also sought permission to intervene in action No. 1 and, upon intervention, summary judgment dismissing the complaint in that action against the O’Rourkes. Finding that Progressive’s delay in seeking intervention would cause significant prejudice to plaintiff, Supreme *1342 Court denied all of the relief requested.[3] This appeal by Progressive ensued.
We begin with Progressive’s request for vacatur of the default judgment in action No. 1. It is well settled that a judgment may be vacated by a court upon the motion of “any interested person” (CPLR 5015 [a]; accord Oppenheimer v Westcott, 47 NY2d 595, 602 [1979]). Consistent with the legislative goal of “assuring] that a broad class of persons, not limited to parties in the formal sense, could move [for relief pursuant to CPLR 5015]” (Oppenheimer v Westcott, 47 NY2d at 603), it has been held in this context that “all that is necessary is that some legitimate interest of the moving party will be served and that judicial assistance will avoid injustice” (Lane v Lane, 175 AD2d 103, 105 [1991] [internal quotation marks and citation omitted]). In our view, that purpose will be served under the particular circumstances present here by permitting Progressive to move to vacate the default judgment against the O’Rourkes, notwithstanding its disclaimer of coverage.[4] Specifically, by virtue of the assignment agreement, Progressive is the only person or entity with an interest in vacating the default judgment, as the O’Rourkes have the potential to benefit financially by allowing that judgment to remain in effect. Without the judgment, neither plaintiff nor the O’Rourkes would stand to reap any significant benefit from action No. 2 (see Lane v Lane, 175 AD2d at 105).[5] Thus, the particular terms of the assignment agreement place the O’Rourkes in the unusual position of opposing Progressive’s motion to vacate the substantial judgment entered against them. While the collusive nature of the assignment agreement may not have led to the default judgment, the *1343 financial benefit that the O’Rourkes stand to gain as a result of that agreement clearly provides them with an incentive to act in unison with plaintiff going forward.[6] At the very least, to allow such a result offends our sense of justice and propriety and cannot be condoned.
With regard to the merits of Progressive’s motion to vacate the default judgment, plaintiff argues that, inasmuch as the assignment agreement was not made until after the judgment was entered, Progressive lacks grounds for vacatur pursuant to CPLR 5015 (a) (3). Additionally, plaintiff argues that Progressive’s motion is untimely. In recognition of the strong preference for deciding cases on their merits, we are of the view that, even if the circumstances of this case do not fall squarely within CPLR 5015 (a) (3), Supreme Court should have exercised its inherent power to vacate the challenged default judgment in the interest of justice (see CPLR 5015; Wade v Village of Whitehall, 46 AD3d 1302, 1303 [2007]; Birsett v General Ace. Ins. Co. of Am., 241 AD2d 683, 685 [1997]; compare Dyno v Lewis, 300 AD2d 784, 785 [2002], appeal dismissed 99 NY2d 651 [2003]). As to the timeliness of the motion, we note that, although a substantial period of time had elapsed since entry of the default judgment, Progressive alleges that it had no reason to question the propriety of such judgment until it learned in September 2010 — after the commencement of action No. 2 — of the assignment agreement which could potentially result in the O’Rourkes recovering a significant sum of money in the event that plaintiff successfully recovered from Progressive. Progressive then moved to vacate the judgment in action No. 1 within a reasonable period of time after it became aware of the assignment agreement (compare Rizzo v St. Lawrence Univ., 24 AD3d 983, 984 [2005]; City of Albany Indus. Dev. Agency v Garg, 250 AD2d 991, 993 [1998]; B.U.D. Sheetmetal v Massachusetts Bay Ins. Co., 248 AD2d 856, 856-857 [1998]).
Furthermore, the collusive nature of the assignment agreement created a disincentive for the O’Rourkes to ensure that the judgment was in conformance with the law and the facts. Indeed, it is undisputed that such judgment was based upon a factual error that could impact the determination as to whether the location of the O’Rourkes’ vehicle was a substantial factor in causing plaintiffs injuries — and, therefore, the extent of the O’Rourkes’ liability, if any — and that the amount of the judgment exceeds the amount permitted by CPLR 3215 (b). Thus, *1344 regardless of the merits of action No. 2, vacatur of the default judgment in action No. 1 will uphold the integrity of the judicial process under the particular circumstances of this case.
For the same reasons, Supreme Court should have granted Progressive’s motion for intervention. While we recognize that such intervention may result in further delay in this already protracted litigation, the question of £1[w]hether there was undue delay depends on the facts and circumstances of the case” (Matter of Fink v Salerno, 105 AD2d 489, 490 [1984] lv dismissed and appeal dismissed 63 NY2d 907 [1984], lv dismissed 63 NY2d 607 [1984]). Assuming, for the purposes of the motion, the truth of Progressive’s allegation that it first learned of action No. 1 after judgment was entered, the delay can be excused because it moved for relief within a reasonable time after it became aware of the assignment agreement (see generally Halstead v Dolphy, 70 AD3d 639, 640 [2010]; Poblocki v Todoro, 55 AD3d 1346, 1347 [2008]; compare Agway Ins. Co. v P & R Truss Co., Inc., 11 AD3d 975, 976 [2004]; Buckeridge v Ludlow Motor Co., Inc., 276 App Div 511, 513 [1950], lv dismissed 301 NY 609 [1950]). Moreover, a significant portion of the overall delay in the resolution of action No. 1 is attributable to the process of completing plaintiff’s litigation with respect to Giebel before proceeding with an inquest on the claim against the O’Rourkes. In addition, as previously stated, given the combined effect of the assignment agreement and the factual errors in plaintiff’s motion for a default judgment, we cannot conclude that it would be unjust to require plaintiff to meet its burden of proving its entitlement to relief in action No. 1 with the participation of a party who is motivated to defend that action. In our view, it is more important to reach the correct result than to conclude the matter expeditiously. While any further delay is unfortunate, a contrary result would potentially reward plaintiff and the O’Rourkes for their improvident agreement. Accordingly, Progressive’s motion to intervene should have been granted (see generally Town of N. Elba v Grimditch, 96 AD3d 1305, 1306-1307 [2012]; Berkoski v Board of Trustees of Inc. Vil. of Southampton, 67 AD3d 840, 843-844 [2009]; compare Carnrike v Youngs, 70 AD3d 1146, 1147 [2010]).
Finally, although Supreme Court did not directly address the merits of Progressive’s motion for summary judgment, upon our own factual review of the record, we find that questions of fact exist — for example, as to whether the O’Rourkes’ vehicle was parked on the side of the road or in the roadway and, if in the roadway, whether this was the proximate cause of plaintiff s injuries — which preclude summary judgment (see Grant v Nem *1345 bhard, 94 AD3d 1397, 1398-1399 [2012]). Thus, that part of Progressive’s motion seeking summary judgment in action No. 1 is denied, rendering Progressive’s motion for summary judgment in action No. 2 academic.
To the extent not specifically addressed herein, the parties’ remaining contentions have been examined and are either academic or without merit.
Mercure, J.P., Lahtinen, Malone Jr. and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the motion of Progressive Insurance Company to (1) vacate a default judgment in action No. 1 and (2) intervene in action No. 1; motion granted to that extent and said default judgment vacated; and, as so modified, affirmed.

. A copy of the assignment, prepared by plaintiff’s counsel, is not contained in the record on appeal, but its existence is undisputed.

. Although the supporting affidavit of Progressive’s counsel included a request for summary judgment dismissing the complaint in action No. 2 in the event that summary judgment dismissing action No. 1 was granted, the notice of motion contained only the caption of action No. 1 and did not set forth a request for any relief in action No. 2. Progressive continues to argue on appeal that it is entitled to such relief despite Supreme Court’s failure to address the request therefor in the order appealed from.

. Inasmuch as Progressive did not disclaim coverage until after it was notified of the default judgment, due to its alleged lack of notice of action No. 1 prior to that time, it cannot be said at this juncture that Progressive made a voluntary election to refuse to defend the O’Rourkes in action No. 1 while it was being litigated, thereby waiving its right to seek vacatur of the default judgment (see generally Shaw v Shaw, 97 AD2d 403, 404-405 [1983]; compare Schellenberg v Wiemann, 120 AD2d 659, 660 [1986], lv denied 68 NY2d 609 [1986]).

. Under the O’Rourke policy limits, the most that plaintiff could recover is $100,000. However, under the bad faith claim, plaintiff could recover the full amount of the default judgment — approximately $1 million.

. Since we do not have the benefit of reviewing the exact terms of the agreement, we do not know whether it, in fact, requires the O’Rourkes to cooperate with plaintiff to the detriment of Progressive.