## Bahnuk v Countryway Ins. Co.

2024 NY Slip Op 30923(U)

March 21, 2024

Supreme Court, Broome County

Docket Number: Index No. EFCA2019000970

Judge: Eugene D. Faughnan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At a Motion Term of the Supreme Court of the State of New York held in and for the Sixth Judicial District at the Broome County Courthouse, Binghamton, New York, on the 28th day of November 2023, by Microsoft Teams.

PRESENT:   HON. EUGENE D. FAUGHNAN
           Justice Presiding

STATE OF NEW YORK
SUPREME COURT : COUNTY OF BROOME
_____

PAUL BAHNUK,

                    Plaintiff,                    DECISION AND ORDER

        vs.

                                                  Index No. EFCA2019000970

COUNTRYWAY INSURANCE COMPANY,

                    Defendant.
_____

APPEARANCES:

Counsel for Plaintiff:            ANTHONY R. MARTOCCIA, Esq.
                                  Stanley Law Offices
                                  215 Burnet Avenue
                                  Syracuse, NY 13203

Counsel for Defendant:            ALAN J. PIERCE, Esq.
                                  Hancock Estabrook, LLP
                                  100 Axa Tower I, 100 Madison Street
                                  Syracuse, NY 13202

## EUGENE D. FAUGHNAN, J.S.C.

This matter is currently before the Court to address the motion filed by Plaintiff Paul Bahnuk ("Bahnuk") to compel discovery from Defendant Countryway Insurance Company ("Countryway") concerning reserves set by Countryway in regard to the underlying accident in this case. For the reasons set forth below, Plaintiff's motion is granted.[1]

## PROCEDURAL FACTS

This case has been before the Court previously and the Court has issued two prior Decisions. The facts are more fully set forth in those Decisions, and will only be highlighted here, as pertinent.

Plaintiff was working as a paramedic on March 6, 2012 and sustained injuries while responding to a call at an apartment in a building in Binghamton, NY, owned by non-party Pauline Williams and insured by Countryway. In a Decision and Order dated June 27, 2020, the Court denied Defendant's motion to dismiss and also denied Plaintiff's motion for summary judgment, without prejudice. At that point, discovery had not been conducted, so the Court's denial of Plaintiff's summary judgment motion was made without prejudice. Defendant appealed the Decision and Order but did not perfect the appeal.

Thereafter, the parties engaged in some limited discovery and subsequently, both parties made a motion for summary judgment. The Court issued its second Decision and Order on September 28, 2021 denying both motions. The Court determined that Countryway did not provide sufficient notice of its disclaimer to the injured party, Bahnuk, and therefore Countryway had waived its right to rely on the grounds set forth in its denial. The Court also found that there were questions of fact precluding summary judgment for the Plaintiff. Both parties appealed and the Third Department rendered a Memorandum and Order on March 23, 2023 affirming this Court's September 28, 2021 Decision and Order. *Bahnuk v. Countryway Ins. Co.*, 214 AD3d 1218 (3rd Dept. 2023).

---

[1] All the papers filed in connection with the motion are included in the NYSCEF electronic case file and have been considered by the Court.

## BACKGROUND FACTS

After the accident, Bahnuk brought an action against the property owner (Williams) in Broome County Supreme Court (Index No.: CA2013000491). Countryway denied coverage for this incident because Williams was not living at the premises, and secondly, because she was using the premises as rental property. Based on those facts, Countryway advised Williams that it would not be providing her with a defense of the action. Williams was thus required to defend the action herself without any insurance carrier. Williams ultimately signed a Confession of Judgment to Bahnuk for $100,000 which was entered in the County Clerk's Office in January 2019.

Subsequently, Bahnuk commenced this case, which is a direct cause of action against Countryway under Insurance Law § 3420 (a)(2). That statute permits an injured party to bring an action against an insurer after that injured party has obtained a judgment against the insured, but the judgment remains unsatisfied. In order to succeed in an action under Insurance Law § 3420(a)(2), there must be an underlying valid and enforceable judgment. *Bahnuk v. Countryway*, 214 AD3d at 1220 (emphasis added). Where a judgment was the product of collusion and "offends ... a sense of justice and propriety [it] cannot be condoned." *Bond v. Giebel*, 101 AD3d 1340, 1343 (3ʳᵈ Dept. 2012). Thus, if there was collusion in the execution of the underlying Confession of Judgment in favor of Bahnuk, then he cannot recover from Countryway on the basis of that underlying judgment. That is the crux of the matter herein. As the Third Department noted

> a question remains as to whether the negotiations between plaintiff and Williams in the underlying litigation amounted to such misconduct. On the one hand, it is true that, as defendant argues, Williams sought to avoid risk by agreeing to a confession of judgment in the precise amount of her insurance policy limit in exchange for an assurance that plaintiff would not seek to enforce the judgment against her, and this resolution occurred without any meaningful discovery having been undertaken. On the other hand, however, an agreement to cap damages in the amount of a policy limit is not unheard of in personal injury matters and does not necessarily mean that something untoward took place in the negotiations. Further, recognizing that plaintiff, as a consequence of his injuries, underwent a surgery and multiple hospitalizations and missed approximately 30 weeks of work, incurring a Workers' Compensation lien in excess of $60,000, it cannot be said that the agreed-upon amount of $100,000 was per se unreasonable. In addition, it is noted that the resolution was apparently negotiated by the lawyers for plaintiff and Williams and

3

discussed with Supreme Court. ...Under these circumstances, Supreme Court appropriately found that a factual question exists regarding the intentions and conduct of plaintiff and Williams, such that summary judgment was not warranted.

*Bahnuk v. Countryway Ins. Co.*, 214 AD3d at 1220-1221.

Following the Third Department's decision in March 2023, the parties continued to conduct discovery. Cherie Marshall, a claims representative for Countryway, appeared for a videotape deposition on August 3, 2023. During the course of that deposition, Ms. Marshall testified that Countryway had set a reserve on the file. When Plaintiff's counsel asked the amount of the reserve, Defendant's counsel directed her not to answer that question. That refusal prompted the instant motion. Plaintiff argues that the amount of reserve that Countryway set on the file is relevant to the issue of whether there was any collusion; Defendant argues that information regarding reserves is not discoverable nor admissible, particularly when the case does not involve a bad-faith claim.

In support of his motion, Plaintiff submitted an attorney affirmation from Anthony Martoccia, Esq., dated October 12, 2023 with Exhibits, including the transcript from the Marshall deposition, and a Memorandum of Law. In opposition, Defendant submitted an attorney affirmation from Alan J. Pierce, Esq., dated November 9, 2023 with Exhibits.

## LEGAL DISCUSSION AND ANALYSIS

With respect to civil actions, CPLR 3101 (a) provides that "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof." The Court of Appeals has noted that "[t]he words, 'material and necessary', are . . . to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason." *Forman v. Henkin*, 30 NY3d 656, 661 (2018), *quoting Allen v. Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 (1968); *County of Warren v. Swan*, 203 AD3d 1504 (3rd Dept. 2022); *Loiselle v. Progressive Cas. Ins. Co.*, 190 AD3d 17, 19 (3rd Dept. 2020). It is well established that the "statute embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing

4

[* 4]

the possibility for ambush and unfair surprise." *Spectrum Sys. Intl. Corp. v. Chemical Bank*, 78 NY2d 371, 376 (1991); *see Galasso v. Cobleskill Stone Prods., Inc.*, 169 AD3d 134 ("3rd Dept. 2019). "If there is any possibility that the information is sought in good faith for possible use as evidence-in-chief or in rebuttal or for cross-examination, it should be considered evidence material in the prosecution or defense." *Allen v. Crowell-Collier Publishing Co.*, 21 NY2d at 407. "New York has long favored open and far-reaching pretrial discovery." *DiMichel v. South Buffalo Ry. Co.*, 80 NY2d 184, 193 (1992), *cert denied sub nom Poole v. Consolidated Rail Corp.*, 510 U.S. 816 (1993).

With that backdrop, the Court now considers whether the material sought in this case, the insurance carrier's reserves, is discoverable. "The discoverability of this information does not govern its use or admissibility at trial, which will be subject to appropriate evidentiary rulings." *Loiselle v. Progressive Cas. Ins. Co.*, 190 AD3d at 20, n.5.

Countryway argues that the reserve set on this case is irrelevant and not subject to discovery. Rather, according to Countryway, reserve information would only be discoverable in a bad-faith claim, and even in those cases, it is arguable. Since Bahnuk has not advanced a bad-faith claim, Countryway contends that disclosure of the reserve is not available in this situation.

Plaintiff counters that the request for reserve information is appropriate under the statute's liberal disclosure intendment. In particular, Plaintiff notes that Defendant has raised the issue of collusion in the execution of the Bahnuk-Williams Confession of Judgment, and that in order to resolve that question, Countryway's own assessment of its potential exposure (as reflected in the reserve that it established) has at least some bearing on the collusion argument.

"In general, reserve accounts are monies set aside by an insurer to pay potential claims. The amounts set aside represent value approximations made by the insurance company regarding what will be sufficient to pay all the obligations under the policy. It is a preliminary estimate of potential liability that does not necessarily take into account all the factual and legal components comprising a particular claim." *Continental Ins. Co. v. Garlock Sealing Tech., LLC*, 2006 NY Misc LEXIS 9430, *3 (Sup. Ct., NY County 2006). The establishment of reserves is mandated by statute (New York Ins. Law § 1303)[2], and serves to measure the financial health of the

---

[2] That statute provides that all insurers "shall … maintain reserves in an amount estimated in the aggregate to provide for the payment of all losses or claims incurred on or prior to the date of statement, whether reported or unreported, which are unpaid as of such date and for which such insurer may be liable."

5

insurer, i.e. that it is sufficiently funded to cover potential losses. *See, Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co.*, 1994 NY Misc. LEXIS 709 (Sup. Ct., NY County 1994). Thus, as a measure of overall financial stability, a reserve amount in a particular claim is of limited value, and provides the rationale for the position that reserve information is generally not discoverable. Indeed, there is some support for that proposition. *See, e.g. Drennan v. Certain Underwriters at Lloyd's of London*, 575 B.R. 29 (Bankr., SDNY 2017) (and cases cited therein).

Defendant also cites to *Hart v. RCI Hospitality Holdings, Inc.*, 90 F.Supp3d 250 (SDNY 2015) as support for the non-discoverability of reserve information, but the Court finds *Hart* to be distinguishable. First, *Hart* did not deal with discovery but rather, was a *motion in limine*, addressing whether Plaintiff would be allowed to question witnesses at the trial about the reserve. There is a vast difference between permitting questions at a deposition concerning reserves, and the usage of reserve information at trial in front of a jury. On this motion, this Court is being asked to rule on the discoverability of the reserve, not its admissibility. This critical distinction makes *Hart* inapposite. Second, in *Hart* the court observed that the issue for the jury was defendants' state of mind, to wit, whether defendants acted willfully in not paying plaintiffs a minimum wage. Defendants in *Hart* had characterized plaintiffs as independent contractors rather than employees. In concluding that the reserve information was not discoverable, the court in *Hart* noted that the reserve was "not relevant to the defendants' state of mind at the time of the events at issue." *Hart*, 90 F.Supp3d at 62. That is to say, the amount of reserve that was established could have no bearing on whether defendants' classification of plaintiffs as independent contractors, long before the action was commenced, was believed to be correct at the time the decision was made. The court's conclusion in *Hart* was not based on a blanket prohibition against discovery of reserves, but rather was based on the fact that the material was not relevant to the issue in that case, and could cause jury confusion.

In the present case, the reserve information is being sought as part of discovery, not in the context of a trial. As noted above, that does not mean it will be admissible. At the discovery phase, the main issue is relevancy. Relevance should be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 US Dist. LEXIS 162164, *7 (SDNY 2015) (internal quotation marks and end citation omitted). The issue, as argued by Countryway, and framed by the Third Department on the appeal, is whether there was collusion

6

in the underlying settlement between Bahnuk and Williams. The amount of the reserve could be relevant to that issue. For example, if the reserve was set at the amount of the underlying judgment ($100,000), then it would be reasonable to ask further questions as to the basis of that reserve, such as was the reserve based simply on the amount of the underlying Confession of Judgment, or was there an independent calculation performed as to Plaintiff's damage. If Countryway's reserve was based on its own independent review of Plaintiff's damage, and it was equal to the amount of the underlying judgment, then that would tend to establish the reasonableness of the underlying Confession of Judgment and negate any finding of collusion.

The Court is not suggesting that discovery of the reserve is conditioned on the reserve being based on Countryway's valuation of Plaintiff's damage. At this point, the amount of the reserve is at least pertinent or relevant. It is sufficient that there is some possibility that the reserve information could lead to information that would have bearing on the main issue in this case, which is Countryway's argument that the underlying judgment was the product of collusion.

The Court is also not persuaded by Defendant's argument that disclosure of reserve information is only appropriate in bad-faith claims. Defendant has not cited cases for that broad proposition. It is true that the amount of reserve would have little relevance if the issue was something like the interpretation of an insurance policy, but there is not an absolute bar to discovery of reserve information. Some cases have created an "exception" to the non-discoverability of reserves, when a bad-faith claim is asserted, but this Court does not believe that discoverability is limited to bad-faith claims.

A brief review of bad-faith claims is helpful to see the rationale of the discoverability (or non-discoverability) of reserves. "In every contract 'there exists an implied covenant of good faith and fair dealing.'" *Gordon v. Nationwide Mut. Ins. Co.*, 30 NY2d 427, 437 (1972), *quoting Kirke La Shelle Co. v. Armstrong Co.*, 263 NY 79, 87 (1933). When the insured believes that the insurance carrier has failed to satisfy that covenant, a claim of bad-faith can be advanced. "[I]n order to establish a prima facie case of bad faith, the plaintiff must establish that the insurer's conduct constituted a 'gross disregard' of the insured's interests--that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer. In other words, a bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference

7

to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted." *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 453-454 (internal citation omitted); *accord Healthcare Professionals Ins. Co. v. Parentis*, 165 AD3d 1558 (3rd Dept. 2018); *Miller v. Allstate Indem. Co.*, 132 AD3d 1306 (4th Dept. 2015). "In establishing a claim for bad faith, although not an exhaustive list, 'the courts will consider the facts and circumstances surrounding the case, including whether liability is clear, whether the potential damages far exceed the insurance coverage and any other evidence which tends to establish or negate the insurer's bad faith in refusing to settle.'" *Roemer v. Allstate Indem. Ins. Co.*, 163 AD3d 1324, 1326 (3rd Dept. 2018), *quoting Redcross v. Aetna Cas. & Sur. Co.*, 260 AD2d 908, 911 (3rd Dept. 1999) (other citations omitted).

In the context of bad-faith claims, some courts have found that the establishment of a reserve could be relevant and discoverable because it may have bearing on the insurer's belief about coverage, amount of damages and the insurer's potential liability. That does not mean bad-faith claims are the only situations in which reserve information would be discoverable. Rather, this Court is of the view that reserve information can also be relevant in other contexts, such as the current case, where the reserve amount could have bearing on the ultimate issue. In this case, the issue is the conduct of Bahnuk and Williams in entering into the underlying Confession of Judgment. To that end, the reasonableness of the settlement amount is one material component. Certainly, evidence may come from Bahnuk and Williams on that issue, but other evidence to establish the settlement was "reasonable" can come from the insurer's reserve on the case. If it is shown that the insurer had done an independent review of Plaintiff's damages prior to the underlying confession of judgment and concluded that Plaintiff had incurred, or would incur, $100,000 in damages, then that would be additional evidence as to the reasonableness of the underlying Confession of Judgment. Although Bahnuk has not raised a bad-faith claim, the Court does not believe that precludes the discovery of reserve information. Accordingly, the Court concludes that Countryway's reserve information is relevant and discoverable.

There is one other matter that merits discussion. During the oral argument on this motion, the Court suggested that it would be appropriate for Defendant to at least advise Plaintiff and the Court what the amount of the reserve was. By letter dated December 1, 2023, counsel

8

for Countryway did provide information as to the damage only value of the reserve.[3] Thereafter, by letter of the same date, Plaintiff's counsel argued that the reserve was discoverable and admissible. However, Plaintiff's motion was based on discoverability, not admissibility, and the Court deems it inappropriate to expand the scope of the motion at this point. Therefore, the Court is only issuing this ruling on discovery.

## CONCLUSION

Based on the foregoing, the Court determines that the amount of Countryway's reserve is discoverable, and that Plaintiff should be allowed to continue questioning of Ms. Marshall concerning the reserve amount set by Countrway and the bases for that reserve. The Court is withholding determination of admissibility at this time. Accordingly, it is hereby

ORDERED, that Bahnuk's motion is GRANTED, and it is further

ORDERED, that the parties are to arrange for the continued deposition of Cherie Marshall, which shall be completed within 45 days of the date of this Decision and Order, and it is further

ORDERED, to ensure proper compliance with the directions made herein, and to set a date for the trial of this matter, the parties are directed to appear for a **preliminary conference on APRIL 22, 2024 AT 2:30 PM**, which will be conducted virtually, by Microsoft Teams. Chambers will provide the link for the parties to join the conference.

THIS CONSTITUTES THE DECISION AND ORDER OF THIS COURT.

Dated:  March 21 , 2024
Binghamton, New York

HON. EUGENE D. FAUGHNAN
Supreme Court Justice

---

[3] Although not relevant to the Court's analysis and determination, counsel reported that the reserve is, in fact, $100,000.

9


The NYSCEF website has received an electronic filing on 03/21/2024 09:22 AM. Please keep this notice as a confirmation of this filing.

**EFCA2019000970**
**Paul Bahnuk v. Countryway Insurance Company**
**Assigned Judge: Eugene D Faughnan**

## Documents Received on   03/21/2024 09:22 AM

| Doc # | Document Type |
|---|---|
| 131 | DECISION + ORDER ON MOTION, Motion #5 |

## Filing User

Filed by court user.

## E-mail  Notifications

An email regarding this filing has been sent to the following on 03/21/2024 09:22 AM:

ANTHONY R. MARTOCCIA - amartoccia@stanleylawoffices.com
JOHN L. MURAD JR - jmurad@hancocklaw.com
ALAN J. PIERCE - apierce@hancocklaw.com
ROBERT A. QUATTROCCI - rob@stanleylawoffices.com